**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **ATTILA BIBER** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-804** |
| | ) | |
| **PIONEER CREDIT RECOVERY, INC.,** | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This putative class action arises from defendant's issuance of a letter that allegedly violates the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Plaintiff, Attila Biber, a Virginia resident who has defaulted on federal student loans, contends that defendant, Pioneer Credit Recovery, Inc. ("Pioneer"), a debt-collection corporation, violated the FDCPA by sending letters that mislead recipients into believing that their wages are about to be garnished if the recipients do not pay their debts. Pioneer has moved to dismiss the Second Amended Complaint ("SAC"), raising a facial challenge to Biber's Article III standing to bring an FDCPA claim[1] and contending that the SAC fails to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.

For the reasons that follow, the motions to dismiss are granted in part and denied in part.

---

[1] A facial challenge to a plaintiff's standing to bring a claim attacks a federal court's subject matter jurisdiction on the ground that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

**I.**[2]

The SAC alleges that on April 1, 2016, Pioneer sent a letter ("the Letter") to Biber and others, which was captioned in bold, capitalized letters, "Administrative Wage Garnishment Proceedings Notice." SAC ¶ 13 & Ex. A. Because the Letter, which was attached to the SAC as an exhibit, is the centerpiece and focus of Biber's SAC, it is appropriate to recite the following principal statements contained in the Letter:

- "This may be your last opportunity to make satisfactory payment arrangements on your student loan(s)";

- "If these arrangements are not made, we will begin or continue the process of verifying your employment for Administrative Wage Garnishment";

- "The United States Congress has enacted a law . . . that allows guarantors . . . to offset the wages of student loan defaulters without filing a lawsuit";

- "[A] guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment . . . [T]he amount deducted for any pay period may not exceed 15 percent of disposable pay";

- "This [statutory] provision overrides all applicable state law, and allows for the garnishment of student loan defaulter's wages";

- "Before an administrative order is issued, defaulters are given notice and an opportunity for a hearing as part of this federal wage offset program";

---

[2] The facts recited here are derived from the SAC. Because Pioneer has raised a "facial challenge" to subject matter jurisdiction, the familiar Rule 12(b)(6) standard applies to Biber's factual allegations. *See Kerns*, 585 F.3d at 193 (on a Rule 12(b)(1) motion raising a facial challenge to subject matter jurisdiction, "the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged" in the complaint). In this regard, the well-pled facts are taken as alleged in the complaint. *See Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). The exhibits attached to the SAC are also properly considered. *See Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Rule 10(c), Fed. R. Civ. P.

- "After the completion of this administrative offset process, your employer may be ordered to deduct 15% of your disposable income before you are paid. If your employer does not comply with this order, a lawsuit may be filed against your employer";

- "Because the use of this federal wage offset law could reduce your take-home pay substantially, we are providing you with the chance to establish a satisfactory payment arrangement so you can voluntarily satisfy your obligation on more reasonable terms. We are hoping we can reach a satisfactory agreement before we proceed with further action"; and

- "This is an attempt, by a debt collector, to collect a debt, and any information obtained will be used for that purpose."

- The letter further lists that the remaining principal owed totals § 41,893.53, the interest is $2,212.80, and the collect charge amounts to $9,706.95.

*Id.* Ex. A.

Biber, in the SAC, alleges that Pioneer violated the FDCPA's prohibition on a debt collector's "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.[3] Specifically, the SAC alleges that Pioneer used false, deceptive, or misleading representations or means in the following ways:

- Pioneer "falsely represent[ed] that it was going to perform an Administrative Wage Garnishment, without first providing the notices required by 20 U.S.C. § 1095a and 34 C.F.R. §§ 34.1-30";

- Pioneer "falsely implied that [the Letter] was the Notice of Proposed Garnishment required under" federal law;

- Pioneer "falsely represented [that] it had the authority to garnish wages at the time of the letter, if payment arrangements were not made at that time";

- Pioneer "falsely represented the character, amount or legal status of [plaintiff's] debts";

- Pioneer "falsely represented and implied that the [Letter] was legal process";

---

[3] Notably, § 1692e includes a non-exclusive list of examples of unlawful conduct. *See* 15 U.S.C. §§ 1692e(1)–(16).

- Pioneer "deprived [Biber] of statutory verification rights which [Biber] would otherwise have under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34.1-30 [such that] Plaintiff suffered an informational injury as a result of being deprived of information to which he was legally entitled"; and

- Pioneer "used unfair and unconscionable means to collect and attempt to collect from Plaintiff and the class members."

SAC ¶¶ 23, 36.

Pioneer challenges the adequacy of the SAC on two grounds. First, Pioneer contends that dismissal is required pursuant to Rule 12(b)(1), Fed. R. Civ. P., on the ground that Biber lacks standing to raise any of his FDCPA claims. Second, Pioneer asserts that the SAC must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground that the SAC lacks adequate factual allegations to support Biber's claims for relief. These motions have been fully briefed and argued, and are therefore ripe for disposition. Each motion is separately addressed.

## II.

Analysis necessarily begins with the question of subject matter jurisdiction, for absent such jurisdiction there is no power to adjudicate any issues. In support of its Rule 12(b)(1) motion, Pioneer contends that the allegations in the SAC do not plausibly allege an "injury in fact," and thus Biber lacks Article III standing to bring any of his FDCPA claims. For the reasons that follow, Pioneer's standing challenge succeeds in part and fails in part.

The legal standard for a facial challenge to subject matter jurisdiction is "patterned on Rule 12(b)(6)," such that "the truthfulness of the facts alleged" in the complaint must be assumed. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). To establish standing, a plaintiff must "clearly . . . allege facts demonstrating" three elements: "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations

omitted). Pioneer has focused its jurisdictional challenge on the first prong, contending that the SAC failed to allege an injury in fact.

As the Supreme Court reiterated in *Spokeo*, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (quotation marks omitted). To be "concrete," the injury must "actually exist," though it need not be "tangible." *Id.* at 1548-49 (quotation marks omitted). Importantly, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1549 (quotation marks and alterations omitted). But the Supreme Court in *Spokeo* cautioned that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* In this regard, in evaluating the Fair Credit Reporting Act's ("FCRA")[4] mandate that a reporting agency provide accurate information, the Supreme Court in *Spokeo* noted that a statutory violation will not always "cause harm or present any material risk of harm" sufficient to confer Article III standing. *Id.* at 1550. For example, in the Supreme Court's view, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm" in the FCRA context. *Id.* Yet, the Supreme Court in *Spokeo* observed that "the violation of a procedural

---

[4] 15 U.S.C. § 1681 *et seq*.

right granted by statute can be sufficient in some circumstances to constitute injury in fact" and, in such circumstances, "a plaintiff . . . need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).

Not surprisingly, in the wake of *Spokeo*, the overwhelming majority of courts have held that FDCPA claims similar to Biber's are sufficient to satisfy Article III's requirement that a plaintiff establish an injury in fact. The underlying logic in these opinions is (i) that Congress, in the FDCPA, created a right to accurate debt-related information and non-abusive collection practices, and (ii) that a debt collector's false, misleading, deceptive, or abusive conduct concretely harms a debtor by detrimentally affecting that debtor's decisions regarding his debt.[5]

---

[5] *See, e.g.*, *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (a plaintiff alleging violations of § 1692g and § 1692e(11) "sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'—injury because she did not receive the allegedly required disclosures" to which she was entitled pursuant to the FDCPA); *Bautz v. ARS Nat'l Servs., Inc.*, --- F. Supp. 3d ---, 2016 WL 7422301, at *12 (E.D.N.Y. Dec. 23, 2016) ("[P]laintiff has pled a concrete interest for the purpose of Article III standing . . . because a material violation of FDCPA Section 1692e infringes plaintiff's substantive statutory right to be free from abusive debt practices."); *Kaymark v. Udren Law Offices, P.C.*, No. 13-419, 2016 WL 7187840, at *6-7 (W.D. Pa. Dec. 12, 2016) (plaintiff had standing to allege § 1692e claim because the complaint "alleged misrepresentation of the legal status and amount of [plaintiff's] debt itself" and the "alleged violation of [plaintiff's] right to truthful information and freedom of efforts to collect unauthorized debt constitute[d] a concrete injury"); *Long v. Fenton & McGarvey Law Firm P.S.C.*, --- F. Supp. 3d ---, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016) (plaintiff had standing because "[p]laintiff allege[d] that she received deficient and misleading information regarding her debts, which is a harm defined and made cognizable by the FDCPA." (quotation marks omitted)); *Bowse v. Portfolio Recovery Assocs., LLC*, --- F. Supp. 3d ---, 2016 WL 6476545, at *3 (N.D. Ill. Nov. 2, 2016) ("Because [plaintiff] has alleged a violation of § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party, [plaintiff] has Article III standing to bring this suit."); *Hill v. Accounts Receivable Servs. LLC*, No. 16-219 (DWF/BRT), 2016 WL 6462119, at *4 (D. Minn. Oct. 31, 2016) ("[Section] 1692e establishes a right to truthful information regarding the collection of a debt," the violation of which constituted "real harms and not merely procedural violations"), *appeal docketed*, No. 16-4356 (8th Cir. Dec. 2, 2016); *Hayes v. Convergent Healthcare Recoveries, Inc.*, No. 14-1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016) ("[A] violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15-1012, 2016 WL

In other words, § 1692e provides certain debtors a right to be free from false, deceptive, or misleading conduct or representations by debt collectors, precisely because such conduct or representations may cause harm or a material risk of harm. Thus, in many instances, violations of § 1692e differ significantly from the innocuous, bare "procedural violations" described by the Supreme Court in *Spokeo*.[6] Applied here, the principles announced by the Supreme Court in *Spokeo*, and elucidated in the chorus of FDCPA cases decided following *Spokeo*, point persuasively to the conclusion that Biber has standing to raise most—but not all—of the FDCPA claims alleged in the SAC.

Analysis thus turns to the SAC's individual FDCPA claims.

---

4765839, at *8 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury." (collecting cases)); *Bernal v. NRA Grp., LLC*, --- F.R.D. ---, 2016 WL 4530321, at *4–5 (N.D. Ill. Aug. 30, 2016) (alleged violations of §§ 1692e & 1692f constitute a concrete injury sufficient for Article III standing); *Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14–cv–911, 2016 WL 4522822, at *2–3 (S.D. Miss. Aug. 26, 2016) (alleged violation of § 1692e(8) represents a concrete injury); *Quinn v. Specialized Loan Serv'g*, No. 16 C 2021, 2016 WL 4264967, at *3–5 (N.D. Ill. Aug. 11, 2016) (alleged violation of §§ 1692e(10)–(11) is a concrete injury); *Irvine v. I.C. Sys., Inc.*, --- F. Supp. 3d. ---, 2016 WL 4196812 at *3 (D. Colo. July 29, 2016) ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices, . . . and a debt collector's violation of those rights may constitute a concrete and particularized injury." (citation omitted)); *id.* (plaintiff has standing where "plaintiff's suit is based on her claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt"); *see also Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 827 (E.D. Va. 2015) (pre-*Spokeo* decision holding that plaintiffs had standing to bring, *inter alia*, a § 1692e claim because "[t]he 'injury in fact' suffered by Plaintiffs under the FDCPA is . . . being subjected to the allegedly 'unfair and abusive practices' of the Collection Defendants").

[6] *See Spokeo*, 136 S. Ct. at 1550 ("[N]ot all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.").

**A. False Representation that Pioneer Was Going to Perform an Administrative Wage Garnishment, 15 U.S.C. § 1692e *et seq.***

The SAC alleges that Pioneer, by sending Biber the Letter, "falsely represent[ed] that [defendant] was going to perform an Administrative Wage Garnishment, without first providing the notices required by 20 U.S.C. § 1095a and 34 C.F.R. §§ 34.1-30."[7] SAC ¶ 36. Biber has standing to assert this claim because the SAC alleges facts supporting a plausible inference (i) that Pioneer engaged false, misleading, or deceptive conduct by sending the Letter to Biber, (ii) that Biber was aware of the Letter, and (iii) that Biber could have been materially harmed by relying on the Letter in making debt-related decisions.[8] These are concrete, particularized injuries sufficient to satisfy Article III's injury in fact requirement in the FDCPA context. Moreover, given that Pioneer sent the Letter and that the FDCPA provides for statutory damages, Biber's alleged injury is fairly traceable to Pioneer's conduct and could be redressed by a favorable court decision. *See Spokeo*, 136 S. Ct. at 1547.

Importantly, the SAC has alleged sufficient facts to support a plausible inference that Biber could have been harmed by a false, deceptive, or misleading representation in the Letter—

---

[7] Section § 1095a provides, *inter alia*, that a debtor is entitled to the following rights before his wages may be garnished:

> the [debtor] shall be provided written notice, sent by mail to the individual's last known address, a minimum of 30 days prior to the initiation of proceedings . . . informing such [debtor] of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency or the Secretary, as appropriate, to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the [debtor] under this section[.]

20 U.S.C. § 1095a(a)(2); *cf.* 34 C.F.R. §§ 34.1-30 (similar).

[8] It is well-settled that a plaintiff need not allege that he relied on the Letter's false representations. *Neild v. Wolpoff & Abramson, LLP*, 453 F. Supp. 2d 918, 923 (E.D. Va. 2006) ("[A] plaintiff asserting a claim under § 1692e need not prove actual reliance on a false representation."). This is true even after the Supreme Court's decision in *Spokeo*. *See supra* note 5 and accompanying text.

namely, that Pioneer had already instituted wage garnishment proceedings and that garnishment was imminent, when, in reality, Pioneer had not yet instituted such proceedings and thus had no authority to garnish wages. The following allegations plausibly support such an inference:

- The Letter's title is "**ADMINISTRATIVE WAGE GARNISHMENT PROCEEDINGS NOTICE.**" SAC Ex. A. This title could logically read as conveying that garnishment proceedings have already been commenced, and that the Letter is precisely what it purports to be: Pioneer's *notice* to Biber that such proceedings have begun.

- The next two sentences of the Letter read: "This may be your last opportunity to make satisfactory payment arrangements on your student loan(s). If these arrangements are not made, we will begin *or continue* the process of verifying your employment for Administrative Wage Garnishment." *Id.* (emphasis added.) These statements could also logically be read as a representation that garnishment proceedings have already begun. For instance, the "or continue" language could mean that the garnishment proceedings themselves have already begun. And the statement that Pioneer will "verify[] [Biber's] employment for Administrative Wage Garnishment" could reasonably be read to mean that garnishment proceedings have *concluded*, and that the last step before Biber's wages are garnished is for Pioneer to identify Biber's workplace.

- The Letter then states that "The United States Congress has enacted a law . . . that allows guarantors . . . to offset the wages of student loan defaulters without filing a lawsuit. . . . This provision overrides all applicable state law, and allows for the garnishment of student loan defaulter's wages." *Id.* These sentences could reasonably be read as explaining to Biber that the impending garnishment is legal.

- Furthermore, the Letter notes that "[b]efore an administrative order is issued, defaulters are given notice and an opportunity for a hearing as part of this federal wage offset program." *Id.* This sentence also could bolster Biber's claim that Pioneer falsely represented that Pioneer was about to garnish wages, because the Letter explains that Biber is entitled to notice before an *order* issues—as opposed to notice before *proceedings are initiated*. Thus, a reasonable reader could believe that garnishment proceedings had already commenced, and only a perfunctory order need issue before Biber's wages could legally be garnished. Moreover, it is reasonable to interpret this quoted sentence as claiming that the Letter itself is the required notice before a garnishment order issues. This is so for the obvious reason that the Letter's title is "Administrative Wage Garnishment Proceedings *Notice*." *Id.* (emphasis added).

- The Letter further provides that "[a]fter the completion of this administrative offset process, your employer may be ordered to deduct 15% of your disposable income before you are paid." *Id.* This sentence, too, could reasonably be construed to mean that garnishment proceedings have already commenced, because the reference to the

*completion* of an administrative offset process could reasonably be read to imply that the offset process has already begun.

Notably, nowhere does the Letter *dispel* the notion that garnishment proceedings have already commenced. Thus, it is plausible that the Letter, read in its entirety, caused a concrete, particularized harm to Biber—a false, deceptive, or misleading representation that could have materially impacted Biber's decision-making with respect to his debt payments.

Seeking to avoid this result, Pioneer contends (i) that the SAC fails to allege that Biber ever received or opened the letter, and (ii) that Biber has alleged a mere procedural violation that does not give rise to standing. The first argument is unpersuasive because the SAC, read as a whole, supports the plausible inference that Biber read and was aware of the letter. Biber has not only engaged counsel and brought this action, but he alleges in the SAC that Pioneer sent the Letter *to Biber*. SAC ¶ 13 ("Prior to initiating wage withholding . . . [Defendant] sends a letter to Plaintiff [which] is attached hereto as Exhibit A"). Moreover, the Letter itself is specifically addressed to Biber. *Id.* Ex. A.

Pioneer's second argument is also unconvincing, as Biber plausibly suffers a concrete, particularized harm to a legally protected interest when a debt collector's false, deceptive, or misleading representations could detrimentally affect Biber's decision-making with respect to his debt. Indeed, even cases cited by Pioneer stand for this very proposition. *See, e.g.*, *Tourgeman v. Collins Financial Services, Inc.*, --- F. Supp. 3d ---, 2016 WL 3919633 (S.D. Cal. June 16, 2016), *appeal docketed*, 16-56190 (9th Cir. Aug. 19, 2016). In *Tourgeman*, the plaintiff asserted two FDCPA claims: the first was based on the defendant's state court complaint that had misidentified the plaintiff's creditor, whereas the second FDCPA claim was based on a letter that defendant had sent after the *Tourgeman* litigation had commenced in federal court. *Id.* at *2-3. In the *Tourgeman* court's view, the keys to establishing standing were (i) whether that plaintiff

knew about the defendant's allegedly false statements, and (ii) whether the plaintiff could have been harmed by relying on those statements. *See id.* Given this, the *Tourgeman* court correctly concluded that plaintiff had standing to assert the first FDCPA claim, but lacked standing with respect to the second FDCPA claim.[9] This same logic elucidated in *Tourgeman* and elsewhere[10] obtains in the instant case, as the SAC plausibly alleges that Biber could have reasonably interpreted the Letter to misrepresent that Pioneer had already commenced garnishment proceedings and that garnishment could be imminent, which interpretation could have materially and adversely affected Biber's decisions regarding debt repayment.

Thus, Pioneer's standing challenge must fail with respect to this FDCPA claim.

## B. False Implication that the Letter was a Notice of Proposed Garnishment Required by Federal Law, 15 U.S.C. § 1692e *et seq.*

Next, Biber contends that Pioneer "falsely implied that [the Letter] was the Notice of Proposed Garnishment required under 20 U.S.C. §1095a and 34 C.F.R. §§34.1-30." SAC ¶ 36. This claim survives Pioneer's standing challenge for essentially the same reasons as those stated above. *See supra* Part II.A.

## C. False Representation that Pioneer had Authority to Garnish Wages at the Time of the Letter, 15 U.S.C. § 1692e *et seq.*

Biber further alleges that Pioneer "falsely represented [that Pioneer] had the authority to garnish wages *at the time of the letter*, if payment arranges were not made at that time in

---

[9] With respect to the second FDCPA claim, the *Tourgeman* court concluded that the plaintiff there, unlike the plaintiff in the instant case, lacked standing because that the *Tourgeman* plaintiff "did not receive the letter, and did not even become aware of it until litigation was underway, months after it was mailed, and he admittedly suffered neither pecuniary loss nor mental distress related to it." 2016 WL 3919633 at *3. Importantly, however, the *Tourgeman* court observed that had that plaintiff actually received the letter, the mere "potential risk" of detrimental reliance on the letter "could suffice to demonstrate Article III standing." *Id.*

[10] *See supra* note 5 and accompanying text.

violation of 15 U.S.C. § 1692e, 1692e(4),[11] 1692e(5)[12] and 1692e(10)."[13] SAC ¶ 36(A) (emphasis added). This claim also survives Pioneer's Rule 12(b)(1) motion, for substantially similar reasons to those stated above. *See supra* Part II.A. Indeed, the SAC plausibly alleges that Pioneer falsely, deceptively, or misleadingly represented to have authority, at the time it sent the Letter, to obtain an order of garnishment, when in fact Pioneer could not garnish wages without first providing Biber the requisite § 1095a notice and commencing administrative proceedings.

### D. False Representation of the Character, Amount or Legal Status of the Debts, 15 U.S.C. § 1692e *et seq.*

The SAC alleges that Pioneer "falsely represented the character, amount, or legal status of the debts in violation of 15 U.S.C. § 1692e, 1692e(2)(A)[14] and § 1692e(10)." SAC ¶ 36(B). This claim also survives Pioneer's standing challenge because, as stated above, Biber has plausibly alleged that the Letter falsely, deceptively, or misleadingly represents that debt collection through garnishment was imminent, whereas, in reality, garnishment could not occur until after Pioneer had provided Biber the requisite notice of debtor rights and initiated

---

[11] This subsection provides that it is a "false, deceptive, or misleading representation" to imply "that nonpayment of any debt will result in the . . . garnishment . . . of any property or wages of any person *unless* such action is lawful and the debt collector or creditor intends to take such action." § 1692e(4) (emphasis added).

[12] This provision prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." § 1692e(5).

[13] This provision essentially repeats § 1692e, stating that it is unlawful for a debt collector to employ "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10).

[14] Section 1692e(2)(A) prohibits false misrepresentations of "the character, amount, or legal status of any debt." § 1692e(2)(A).

garnishment proceedings.[15] Such an allegation is sufficient to establish standing under the FDCPA, as Pioneer's allegedly false, misleading, or deceptive statement regarding the legal status of Biber's debt constitutes a concrete and particularized harm to Biber. Accordingly, for essentially the same reasons described above, Biber has standing to assert this § 1692e(2)(A) claim. *See supra* Part II.A.

### E. False Implication that the Letter was Legal Process, 15 U.S.C. § 1692e *et seq.*

The SAC also alleges that Pioneer "falsely represented and implied that the [Letter] was legal process . . . in violation of 15 U.S.C. § 1692e, 1692e(10) and 1692e(13)."[16] SAC ¶ 36(C). This claim must be dismissed for the simple reason that the Letter does not purport to be legal process.

To begin with, the parties agree that the FDCPA does not define the term, "legal process." Yet, most cases where courts have sustained a potential § 1692e(13) claim involved allegations—not present in the instant case—(i) that the debt collectors' correspondence was accompanied by actual service of process,[17] (ii) that the debt collectors held out the

---

[15] *See, e.g.*, *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1102 (D. Ore. 2000) (granting summary judgment to plaintiff on § 1962e(2)(A) claim where debt collector falsely represented that collector could garnish wages within five days).

[16] Section 1692e(13) prohibits any "false representation or implication that documents are legal process." § 1692e(13).

[17] *Wald v. Morris, Carlson, & Hoelscher, P.A.*, No. 09–CV–2286, 2010 WL 4736829, at *4 (D. Minn. Nov.16, 2010) (finding genuine issue as to whether debt collector gave false impression of legal process by sending summons and complaint by mail and not including the acknowledgment of service required by state law for service by mail to be effective); *N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1334 (M.D. Fla. 2009) ("By including [a] Letter and Stipulation (which was printed using the case style) with [a] summons and . . . complaint served by the process server, the Letter and Stipulation were arguably given an 'official imprimatur' that they do not actually possess and [plaintiff] could have been misled as to his or her legal options."); *Pescatrice v. Robert J. Orovitz, P.A.*, No. 07–60653–CIV, 2007 WL 3034929, at *1, *3 (S.D. Fla. Oct. 17, 2007) (plaintiff stated a claim for simulation of legal process by alleging

correspondence as if it were a summons or complaint,[18] or (iii) that the debt collectors' correspondence carried the official imprimatur of a court or government agency.[19] Nothing of the sort is alleged here.

Indeed, Biber lacks standing to bring his "false implication of legal process" claim because (i) there was no service of process accompanying the Letter, (ii) the Letter does not purport to bring Biber into court or an administrative hearing, and (iii) the Letter does not plausibly carry the official imprimatur of a court or administrative agency. Rather, the Letter is written on Pioneer's letterhead and plainly states that it is "an attempt, by a debt collector, to collect a debt." SAC Ex. A.

Accordingly, this claim must be dismissed for lack of standing.[20]

---

that a proposed "Stipulation for Entry of Final Judgment Execution Withheld" was served upon her along with complaint).

[18] *See, e.g.*, *Zimmerman v. Portfolio Recovery Assocs., LLC*, 276 F.R.D. 174, 176-179 (S.D.N.Y. 2011) (finding that plaintiff may have believed a lawsuit had been filed when the debt collector sent documents identical to those generated for use in actual litigation, namely: (1) a summons purporting to require plaintiff to respond in a state court; (2) a complaint bearing a case caption and setting forth a cause of action; and (3) an affidavit); *Wiener v. Bloomfield*, 901 F. Supp. 771, 776–77 (S.D.N.Y. 1995) (noting that plaintiff "probably would assume that the imposing and formal-looking court documents [plaintiff received] were in fact legal process."); *Tolentino v. Friedman*, 833 F. Supp. 697 (N.D. Ill. 1993) (finding that an attorney's "Important Notice," which was mailed along with a summons and complaint, gave the false impression that the attorney was affiliated with the court and that the "Important Notice" was part of the legal process).

[19] *See, e.g.*, *N. Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1334 (M.D. Fla. 2009) (noting that legal process involves the "official imprimatur" of a court); *In re. Murray*, 552 B.R. 1, 7 (Bankr. D. Mass. 2016) (dismissing § 1692e(13) claim arising from a debt collector's letter because "[t]here is nothing about the letter that even remotely suggests it was issued by a court let alone an attempt by a court to induce [plaintiff] to comply with the demand for payment"); *Wiener*, 901 F. Supp. at 776–77; *Tolentino*, 833 F. Supp. 697.

[20] Biber concedes that the classic § 1692e(13) violation is a defendant's attempt to dress up an ordinary collection letter in the trappings of a judicial summons or complaint. Yet Biber, seeking to avoid the conclusion reached here, argues that the Letter nevertheless purports to be "legal

**F. Deprivation of Statutory Verification Rights.**

In a section entitled "Factual Allegations," the SAC also alleges that Pioneer "deprived [plaintiff] of statutory verification rights which [plaintiff] would otherwise have" such that Biber "suffered an informational injury as a result of being deprived of information to which he was legally entitled[.]" SAC ¶ 23. In this regard, Biber contends that Pioneer "created a material risk of financial harm that Congress intended to prevent by enacting 20 U.S.C. §1095a" because the Letter created the risk that Biber "might make payment decisions that he might not have made had he been apprised of all the rights described in the statutorily required form." *Id.* This "deprivation of statutory verification rights" claim must also fail for lack of standing. Put simply, Biber was not yet entitled to disclosure of debtors' rights under 20 U.S.C. § 1095a and 34 C.F.R. § 34 when Biber received the Letter, and thus there was no injury in fact with respect to Biber's "deprivation of statutory verification rights" claim.

Crucially, § 1095a and 34 C.F.R. § 34 contemplate that a debt collector will provide a student loan debtor 30-days' notice, including an explanation of certain debtor rights, before the debt collector may initiate garnishment proceedings.[21] These provisions, however, do not preclude a debt collector from communicating with a debtor before sending the 30-day notice; the rule is simply that, if the debt collector is going to initiate garnishment proceedings, the

_____

process," contending (i) that the letter falsely purports to be a § 1095a notice form, (ii) that a § 1095a form itself constitutes legal process, and (iii) that, by extension, the Letter falsely represents that it is legal process. This argument is unpersuasive; the Letter simply does not and cannot constitute process. *See* C.J.S. Process § 1 ("A notice," such as a § 1095a notice, "may properly be designated as a process where it is given by authority of law for the *purpose of acquiring jurisdiction* of the defendant or of *bringing him or her into court* to answer" (emphasis added)).

[21] *See* 20 U.S.C. § 1095a(a)(2) ("[T]he [debtor] shall be provided written notice, sent by mail to the [debtor]'s last known address, a minimum of 30 days prior to the initiation of [garnishment] proceedings[.]"); 34 C.F.R. § 34.4 (similar).

15

collector must send the debtor notice at least 30 days in advance.[22] In this respect, it is pellucid that Biber was not entitled to such § 1095a or § 34 notice because the SAC concedes that Pioneer *did not* intend to initiate garnishment proceedings. In other words, the SAC alleges that the 30-day notice requirement had not yet been triggered. In this respect, the SAC alleges

- that Pioneer "falsely implied" that the Letter was the required 30-day notice, SAC ¶ 36;

- that Pioneer uses a separate form—i.e., *not* the Letter—when Pioneer sends its *actual* 30-day notice, *id.* ¶ 20 & Ex. B;

- that the "purpose and effect" of the Letter is "to *mislead* consumers into believing that administrative wage-garnishment is imminent," *id.* ¶ 22 (emphasis added); and

- that Pioneer, by sending the Letter, "falsely represent[ed] that [Pioneer] was going to perform an Administrative Wage Garnishment." *Id.* ¶ 36.

These allegations belie Biber's "deprivation of statutory verification rights" claim, as the SAC effectively alleges that Biber was deprived of information to which he did not yet have a right.

Accordingly, Biber's "deprivation of statutory verification rights" claim fails for lack of standing.

### G. Unfair and Unconscionable Means to Collect, 15 U.S.C. § 1692f.

Finally, the SAC alleges that Pioneer "used unfair and unconscionable means to collect and attempt to collect from Biber and the class members, in violation of 15 U.S.C. § 1692f." SAC ¶ 36(D). Although this claim survives Pioneer's standing challenge, *see supra* Part II.A, for the reasons state *infra* Part III.G, this claim must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

---

[22] Of course, as explained above, § 1692e independently regulates debt collection activities by preventing a debt collector from using "any false, deceptive, or misleading representation or means[.]" 15 U.S.C. § 1692e.

* * * * *

Given that Biber has standing to assert several FDCPA claims in the SAC, analysis turns to Pioneer's Rule 12(b)(6) challenge.

## III.

The Rule 12(b)(6) standard is well-settled and may be succinctly stated: a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a valid FDCPA claim, Biber must allege facts supporting the plausible inference that "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 586-87 (E.D. Va. 2012). Pioneer's Rule 12(b)(6) motion challenges only the third prong.

As stated above, Biber's FDCPA claims invoke two statutory provisions: (i) Section 1692e, which prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e; and (ii) Section 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. In evaluating such claims, the Fourth Circuit applies the "least sophisticated consumer" standard. *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 138 (4th Cir. 1996); *Fariasantos v. Rosenberg & Assocs., LLC*, 2 F. Supp. 3d 813, 818 (E.D. Va. 2014). This standard "protect[s] naïve customers," but it does not impose "liability for bizarre or idiosyncratic interpretations of collection notices[.]" *Nat'l Fin. Servs.*, 98 F.3d at 138. Indeed, the "least sophisticated consumer" standard "preserv[es] a quotient of reasonableness and presume[s] a basic level of

understanding and willingness to read with care." *Id.* Thus, a collection notice "must be examined as a whole, not sentence-by-sentence, because the least sophisticated consumer standard does not go so far as to provide solace to the willfully blind or non-observant." *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 756 (E.D. Va. 2010) (quotation marks omitted). Rather, "[e]ven the least sophisticated debtor is bound to read collection notices in their entirety." *Id.*

Under this standard, "a statement is false or misleading if 'it can be reasonably read to have two or more meanings, one of which is inaccurate.'" *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011) (quoting *Brown v. Card  Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (citation omitted)). In this regard, "[t]he test requires a court to consider a statement's 'capacity . . . to mislead,' such that 'evidence of actual deception is unnecessary.'" *Id.* (quoting *Nat'l Fin. Servs.,* 98 F.3d at 139). Moreover, the alleged misrepresentation must be "material." *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013). A material representation is one that could "affect a consumer's ability to make intelligent decisions with respect to the alleged debt." *Penn*, 883 F. Supp. 2d 581, 589 (E.D. Va. 2012).

Given these standards, Pioneer's Rule 12(b)(6) motion must be granted in part and denied in part.

### A. False Representation that Pioneer Was Going to Perform an Administrative Wage Garnishment, 15 U.S.C. § 1692e *et seq.*

For essentially the same reasons as those stated *supra* Part II.A, Biber's claim that Pioneer "falsely represent[ed] that [defendant] was going to perform an Administrative Wage Garnishment" states a claim upon which relief may be granted. *See* SAC ¶ 36. Read in its entirety through the "least sophisticated consumer" lens, the Letter plausibly constitutes a materially false, deceptive, or misleading representation that could "reasonably be read to have to or more meanings, one of which is inaccurate." *Goodrow*, 788 F. Supp. 2d at 472 (quoting §

1692e); *see supra* Part II.A (detailing the Letter's contents). Indeed, Biber has alleged sufficient facts to nudge his claim—that the Letter misrepresented that wage garnishment proceedings were imminent—from possible to plausible. Moreover, the SAC plausibly alleges that misrepresentation could have "affect[ed] [the] consumer's ability to make intelligent decisions with respect to the alleged debt." *Penn*, 883 F. Supp. 2d at 589. Thus, Pioneer's Rule 12(b)(6) motion must be denied with respect to this claim.

### B. False Implication that the Letter was a Notice of Proposed Garnishment Required by Federal Law, 15 U.S.C. § 1692e *et seq.*

Biber's claim that Pioneer "falsely implied that [the Letter] was the Notice of Proposed Garnishment required under 20 U.S.C. §1095a and 34 C.F.R. §§34.1-30" also survives, for essentially the same reasons to those stated above. *See* SAC ¶ 36; *supra* Parts II.A & III.A.

### C. False Representation that Pioneer had Authority to Garnish Wages at the Time of the Letter, 15 U.S.C. § 1692e *et seq.*

For substantially similar reasons, Biber's claim that Pioneer "falsely represented [that Pioneer] had the authority to garnish wages at the time of the letter, if payment arranges were not made at that time," also survives Pioneer's Rule 12(b)(6) motion. *See* SAC ¶ 36(A); *supra* Parts II.A & III.A.

### D. False Representation of the Character, Amount or Legal Status of the Debts, 15 U.S.C. § 1692e *et seq.*

Next, the SAC states a plausible claim that Pioneer "falsely represented the character, amount, or legal status of the debts[.]" SAC ¶ 36(B); *see also* 15 U.S.C. § 1692e(2)(A). In this respect, the SAC alleges sufficient facts to support a plausible claim that Pioneer falsely represented the debt's "legal status." 15 U.S.C. § 1692e(2)(A). Indeed, as noted *supra* Part II.D, the SAC has stated a plausible claim that the Letter falsely represents that garnishment was imminent, which is sufficient to state a claim under the FDCPA. Accordingly, for essentially the

same reasons described above, Biber's § 1692e(2)(A) claim survives Pioneer's Rule 12(b)(6) challenge. *See supra* Parts II.A & II.D.

### E. False Implication that the Letter was Legal Process, 15 U.S.C. § 1692e *et seq.*

As stated above, Biber lacks standing to raise his "legal process" claim, and thus there is no subject matter jurisdiction to adjudicate Pioneer's Rule 12(b)(6) motion. *See supra* Part II.E; *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("[A] court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). This claim must therefore be dismissed pursuant to Rule 12(b)(1), Fed. R. Civ. P.

### F. Deprivation of Statutory Verification Rights.

Similarly, because Biber lacks standing to raise his "deprivation of statutory verification rights" claim, that claim must be dismissed pursuant to Rule 12(b)(1). *See supra* Part II.F; *OpenBand*, 713 F.3d at 185.

### G. Unfair and Unconscionable Means to Collect, 15 U.S.C. § 1692f

Finally, the SAC includes a conclusory allegation that Pioneer "used unfair and unconscionable means to collect and attempt to collect from Biber and the class members, in violation of 15 U.S.C. § 1692f." SAC ¶ 36(D). This claim fails to pass muster under Rule 12(b)(6), as it is axiomatic that a § 1692f cause of action may not be based on the "same alleged misconduct that undergirds [a] § 1692e claim." *Lembach*, 528 F. App'x at 304. Thus, courts routinely dismiss § 1692f claims where the plaintiff "does not allege any conduct in [a § 1692f claim] separate from the conduct that forms the basis of the § 1692e claims." *Penn*, 883 F. Supp. 2d at 594. Importantly, the SAC does not allege any facts unique to his § 1692f claim. Put differently, Biber does not identify which of Pioneer's actions were "unfair and unconscionable,"

20

in violation of § 1692f, as opposed to "false, deceptive, or misleading," in violation of § 1692e. Accordingly, pursuant to Rule 12(b)(6), Biber's § 1692f claim must be dismissed.

## IV.

In sum, Pioneer's Rule 12(b)(1) and 12(b)(6) motions to dismiss must be granted in part and denied in part.

Specifically, Pioneer's motion to dismiss pursuant to Rule 12(b)(1) must be granted with respect to the following claims:

- False Implication that the Letter was Legal Process, 15 U.S.C. § 1692e *et seq.*; and

- Deprivation of Statutory Verification Rights.

The motion to dismiss pursuant to Rule 12(b)(6) must be granted with respect to the following claim:

- Unfair and Unconscionable Means to Collect, 15. U.S.C. § 1692f.

Both the Rule 12(b)(1) and the Rule 12(b)(6) motions must be denied in all other respects.

An appropriate Order will issue.

Alexandria, Virginia
January 11, 2017

_____
T. S. Ellis, III
United States District Judge

21